ALDRICH vs. WOOD, impleaded, etc.

*Contract Construed.    Whether Usurious.    Effect of Usury.*

To enable P., as W.'s agent, to raise money to pay W.'s indebtedness, the latter executed to P. his note and mortgage for $5,000, with interest at ten per cent.  P. borrowed of a bank $3,600, and applied it in part payment of W.'s indebtedness, giving the bank his own note for the sum, and transferring to it W.'s note and mortgage as collateral security.  Afterward X. purchased of P. the note and mortgage, of which he was to hold and own $3,900 absolutely, and the $1,100 as an indemnity against loss as surety on a bond of W.; and for such note and mortgage he paid P.'s note to the bank, and some $200 of cash to P., and retained $58 to make the interest on said securities equal to *twelve* per cent. until due; but this excess of interest enured in fact to the benefit of one B., from whom X. obtained the money.  P. then assigned, and the bank delivered, W.'s note and mortgage to X.: *Held,*

1. That the note and mortgage were the property of W. at the time of X.'s purchase, and P. merely held them as W.'s agent.

2. That the transaction was therefore a loan from X. to W. at an usurious rate of interest.

3. That the securities were invalid, for the usury, in the hands of one who purchased them from X. after maturity.

4. Whether they would have been invalid if purchased *before* maturity, without knowledge of the usury, is not here determined.

DIXON, C. J., dissents.

APPEAL from the Circuit Court for *Kenosha* County.

Action to foreclose a mortgage given to secure payment of a note. The facts will appear from the opinion. *Wood* appealed from a judgment for the plaintiff.

*Bennett & Ullman*, for appellant, contended that the note and mortgage had no legal existence in Pettit's hands, and that the transaction by which they came into the hands of Pricture was a loan of money from the latter to *Wood* at a usurious rate of interest; citing *Powell v. Waters*, 8 Cow. 669; 17 Johns. 176; *Marvin v. McCullum*, 20 Johns. 288; *Bennet v. Smith*, 15 id. 354; *Williams v. Storm*, 2 Duer, 52; *Clark v. Sisson*, 4 id. 408; *Clark v. Loomis*, 5 id. 469; *Newell v. Doty*, 33 N. Y. 83; *Otto v. Durege*, 14 Wis. 571. This being so, the securities are void in the hands of *Aldrich*, regardless of the question of notice to him of the original taint. *Wilkie v. Roosevelt*, 3 Johns. Cas. 206.

*Head & Quarles*, for respondent, argued that the note and mortgage were valid securities. in the hands of Pettit on the day of their transfer to Pricture, September 5th, 1866; that if Pettit had, on that day, brought an action to foreclose the mortgage (supposing it to have been then due), and *Wood* had set up as a defense that there was no consideration, Pettit could have shown that the mortgage was made to extinguish certain claims against *Wood*, and that he had paid a large part of these claims out of his own funds, i. e. funds which he had borrowed from the bank on his own individual note, which would have been an ample consideration (13 Wis. 547); and that the note and mortgage would have been commercial paper in Pettit's

hands even though he had never paid this fifteen day note to the bank. *Dowe v. Schutt*, 2 Denio, 621; *Cameron v. Chappell*, 24 Wend. 93; *Rice v. Mather*, 3 id. 62; *Powell v. Waters*, 8 Cow. 687.   2. If Pricture purchased the note and mortgage, supposing them to be business paper, he must be protected; for usury is matter of intention. *Fay v. Lovejoy*, 20 Wis. 407; *Central Bank of Wis. v. St. John*, 17 id. 157–166; *Merrills v. Law*, 9 Cow. 65; 2 id. 705; Chitty on Con. 541; *Otto v. Durege*, 14 Wis. 571.   The burden of proof is upon the defendant, for the presumption is in favor of the validity of the paper. *Kent v. Waltron*, 7 Wend. 258.

COLE, J.   The court below found, as matters of fact:

1. That the note and mortgage described in the complaint were given to Milton H. Pettit, the payee and mortgagee respectively therein named, at the time therein mentioned, for the purpose of enabling him to negotiate the same and raise money thereupon with which to pay certain indebtedness of the defendant *Peter H. Wood*, for which indebtedness the said Pettit was also liable to an amount exceeding $5,000.

2. That the note and mortgage were not executed to secure Pettit for such liability, and no title thereto passed to him in the first instance, but Pettit acted as the agent of *Wood* in the negotiation thereof.

3. That on the 23d day of July, 1866, Pettit obtained a loan from the First National Bank of Kenosha, of $3,611.71, which he applied in part payment of such indebtedness, and indorsed the note, and transferred and delivered it and the mortgage to the bank as collateral security for such loan.

4. That at the time the said loan was made, Thomas Pricture, now deceased, was the president of such bank, and at that time, and previously, negotiations were pending between him and Pettit for the sale to Pricture of such note and mortgage, which negotiations

were continued until September 5th, 1866, when they resulted in the following agreement, which was fully executed and carried out, to wit: Pricture purchased of Pettit such note and mortgage, $3,900 of which he was to hold and own absolutely, and the remaining $1,100 he was to hold as an indemnity against any loss by reason of the fact that he was one of the sureties for *Wood* on his official bond as county treasurer of Kenosha county; and that he paid for said note and mortgage—first, Pettit's note of July 23d, to the bank, and interest, $3,637.71—second, cash to Pettit, $203.79; the remaining sum of $58.50, necessary to make up the $3,900, was retained by Pricture to make the interest on the securities equal to 12 per cent. until they should become due, but such excess of interest in fact enured to the benefit of Mr. Burbank, who furnished the money to Pricture with which to purchase the securities. Pettit thereupon executed a formal assignment of the securities to Pricture, and they were delivered to him by the bank.

No exceptions were taken to these findings by the plaintiff; and therefore, so far as he is concerned, they are to be considered as in accordance with the weight of testimony while examining the question of usury.

The defendant *Wood* excepted that the court should further have found, in the fourth paragraph, that as a part of the agreement by which Pricture became the owner of said securities, it was agreed in writing that the note and mortgage should draw twelve per cent. interest, instead of ten, until the same should be fully paid. And he also excepted to the finding that the excess of interest in fact enured to the benefit of Burbank, who furnished the money to Pricture with which he purchased the securities. And the defendant further excepted to the finding for the reason that the court should have found that the transaction consummated September 5th, 1866, was a loan by Pricture to *Wood* of $3,900, at a usurious rate of interest.

Assuming, now, the above facts found by the court to be true, so far as there is no exception to them, we proceed to inquire whether the transaction consummated on the 5th of September, 1866, was an usurious loan from Pricture to *Wood*. And this essentially depends upon the question whether these securities at that time had a legal inception in the hands of any one, so that they might be bought like ordinary commercial paper, or whether they then really belonged to *Wood*, and a loan of money was made upon them by Pricture to him. The court found that these securities were executed and delivered to Pettit for the purpose of enabling him to raise money upon them to pay certain indebtedness of *Wood*, and not to secure Pettit for any liability he had incurred, and that no title passed to Pettit in the first instance, but that he acted as the agent of *Wood* in negotiating them. If the finding was not conclusive upon that point, I should inevitably reach the same result upon the evidence. It seems to me that these securities never had a valid existence in the hands of Pettit, but that in all the various negotiations he was acting merely as the agent of *Wood*, endeavoring to effect a loan upon them for *Wood's* benefit. I do not think that at any time he had such an interest in them that he could have enforced their collection against *Wood*, which is said to be the correct test to determine whether they had any legal inception or binding force as contracts in his hands. *Powell v. Waters*, 8 Cowen, 669. True, on the 23d of July, 1866, Pettit effected a loan of the bank of $3,611.71 on his note, due in fifteen days, and transferred the note and mortgage in suit as collateral for the loan. But this was a mere temporary arrangement, resorted to for the purpose of raising money at once to meet *Wood's* pressing indebtedness. These securities, however, were only pledged to the bank to secure this temporary loan, and when the Pettit note was paid, the title to them revested again in *Wood*. And it is proper to

remark here, that the Pettit note was finally paid out of the money advanced on these securities by Pricture, or rather that amount was reserved from the money loaned. So that *Wood* really paid the Pettit note, as he should have done, and doubtless as it was expected he would do, when he succeeded in effecting a loan. The money raised on the Pettit note was applied to the demands against *Wood*, and was truly for his benefit. But it appears the negotiations between Pettit, as the agent of *Wood*, and Pricture continued from July until the 5th of September, when Pricture obtained his money from Chicago, which he had been expecting. And then it was that they consummated and carried out the final agreement, by which Pricture advanced about $3,900 on the note and morgage. The evidence, I think, clearly shows that this was a loan to *Wood* upon the credit of these securities; and that the loan was made upon them at a rate of interest which the law forbids, is too clearly established to admit of doubt or controversy. And it seems to me that there was no sufficient ground for holding that Pricture at this time purchased the note and mortgage of the bank. It is evident that the parties did not so understand the matter, and did not act upon the theory that the bank owned them. They obviously supposed that the note and mortgage still belonged to *Wood* and were under his control, and that he had the exclusive property in them, and was the only party to be consulted in regard to the additional interest which was to be paid upon them. He was in fact so consulted, and not the bank. Moreover, Pricture finally advanced less than $3,900; the remaining $1,100 he was to hold as an indemnity against any loss which he might sustain by reason of being one of the sureties on *Wood's* official bond. This circumstance alone would be quite conclusive upon the question of ownership, and satisfactorily shows that the parties understood that the note

and mortgage then belonged to *Wood.*   For if they were the property of the bank, or of Pettit, is it reasonable to suppose that they would have been sold upon any such terms, or with any such understanding?   It can only be accounted for upon the theory that Pricture considered *Wood* as the real owner of the securities, and that this arrangement, as well as the agreement for extra interest, was to be made with him through his agent Pettit, as it appears it in fact was made.   I am therefore constrained to hold upon the facts found by the court, and upon what the evidence shows, that on the 5th of September, 1866, the parties to the transaction understood that *Wood* was the real legal owner of the note and mortgage; that they were only in the hands of Pettit as his agent to raise money upon for the benefit of *Wood;* that Pricture well knew in what character Pettit held them; and that he exacted an illegal rate of interest for the money which he then advanced.   And I think there is no sufficient warrant for saying that, as between Pricture and *Wood,* the former did not exact and the latter agree to pay usurious interest for the sum loaned.   Whether any of this extra interest enured to the benefit of Burbank, who furnished the money to Pricture seems to me to be quite an immaterial inquiry.   The parties certainly agreed that usurious interest should be paid on the loan until it was repaid.   This was clearly usury, which vitiated the contract.

The plaintiff took the note and mortgage after they became due, subject to all equities existing between the original parties.   Whether the defense of usury would not have been equally available against him had he purchased them before maturity, we need not, therefore, inquire.   And, as the securities were originally negotiated upon a usurious consideration, the defense must prevail against them.

The judgment of the circuit court must therefore

be reversed, and the cause remanded with directions to enter judgment upon the answer, for the defendants.

*By the Court.*—So ordered.

DIXON, C. J., dissents.

A motion for a rehearing was denied.